**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRY SIMONTON, JR.,** | : | **CIVIL NO. 1:15-CV-1454** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **STEPHEN R. GLUNT,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

## MEMORANDUM

Petitioner Terry Simonton ("Simonton") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Lebanon County, Pennsylvania. (Doc. 1). For the reasons discussed below, the court will deny the petition.

## I.    Factual Background

The factual background of this case has been aptly summarized by the state trial court as follows:

> On March 24, 2005, Teresa Fox called police to report an allegation of sexual abuse involving her teenage son, J.S. (N.T. 18). Ms. Fox reported that the Defendant had sexually abused J.S. back in 2004 when the family lived at 301 South Ninth Street. Detective William Walton of the Lebanon City Police Department was dispatched to conduct a preliminary investigation. Detective Walton conducted a "brief" interview of J.S., who stated that the Defendant had placed his "wee wee" into J.S.' "hiney".
>
> Detective James Grumbine is a trained child sex abuse investigator (N.T. 14). Detective Grumbine and Sherry Courchain of Lebanon County Children and Youth Services were assigned to investigate the allegation of abuse committed upon J.S. Numerous interviews were conducted during which J.S. related that "bad things happened" (N.T.

74-77). Eventually, J.S. was able to detail what had occurred using diagrams and anatomically correct dolls (N.T. 106-107; 120-123). As a result, numerous sexually-related charges were filed.

Two jury trials were conducted with respect to the charges filed against the Defendant. During the first trial, a competency hearing was conducted with respect to J.S. We questioned J.S. in-camera and permitted the attorneys to supplement our questions with ones of their own. Following the in-camera hearing, we declared J.S. to be competent. A transcript of this competency hearing has been prepared.

The Defendant's second trial occurred on August 9, 2007. Multiple witnesses provided testimony. J.S. testified that he and his family had previously lived together at 301 South Ninth Street in the City of Lebanon (N.T. 27). At the time, the Defendant was married to J.S.' mother (N.T. 56-57). In addition, J.S.' sister, M.M., also lived at the residence (N.T. 44).

J.S. testified that while he and his family still lived at 301 South Ninth Street, the Defendant would periodically take him to the attic (N.T. 29). There, the Defendant would sexually molest him (N.T. 28). When asked to provide specifics, J.S. stated that the Defendant "sucked" J.S.' penis and made J.S. suck his penis. During these occasions, J.S. stated that the Defendant's penis entered his mouth (N.T. 28). In addition, J.S. indicated that the Defendant inserted his penis into J.S.' butt (N.T. 28). Through Detective Grumbine, the Commonwealth established that J.S. understood these anatomical features of the human body (N.T. 106-109; 120-123).

J.S. could not provide a specific time frame for the incidents of abuse. However, J.S. was clear that the abuse occurred in the attic of 301 South Ninth Street. The Commonwealth established through Teresa Fox and Edward Gustager that J.S. and his family moved away from 301 South Ninth Street during the summer or fall of 2004 (N.T. 92-93; 57). At the time, J.S. was 13 years of age (N.T. 27; 132). Therefore, the Commonwealth circumstantially established that J.S. was 13 years old or younger when the abuse occurred.

J.S. indicated that during one episode of abuse, his sister, M.M., attempted to come up the attic stairs (N.T. 41). J.S. testified that the Defendant instructed M.M. to return downstairs (N.T. 41). J.S.' testimony was corroborated by M.M. M.M. stated that she saw J.S. go to the attic with the Defendant periodically (N.T. 46). On occasion, M.M. would ascend the attic stairs in an effort to see what was going

on. Sometimes the door would be locked (N.T. 46). On other occasions, the Defendant would say "wait a minute" or "hold on" (N.T. 47.)

Following the episodes of abuse, J.S. did tell his sister that the Defendant "touched me at wrong places" when the two were in the attic (N.T. 48). However, J.S. instructed M.M. not to say anything because he "did not want anyone to know" (N.T. 48). J.S. acknowledged this, stating that he did not report the abuse to authorities because "I was afraid that I would get into trouble" (N.T. 41).

The Defendant presented evidence that he denoted was exculpatory. For example, the Defendant established that J.S. told Detective Travis Souders in early 2006: "I lied. I made this up." (N.T. 113). In addition, the Defendant displayed a full-length tattoo of a naked woman that he said had been on his chest for twenty years and argued that J. S. should not be found credible because he did not remember the tattoo (N.T. 165). Further, Defendant himself denied any sexual impropriety regarding J.S. and inferred that the allegations were instigated by his estranged wife (N.T. 163).

On August 9, 2007, the second jury empaneled in this matter rejected the Defendant's arguments and determined that the Commonwealth's evidence was sufficient to establish guilt beyond a reasonable doubt. The jury convicted the Defendant of Rape, Involuntary Deviate Sexual Intercourse, Statutory Sexual Assault and Endangering the Welfare of Children. The Defendant was acquitted of one other count of Involuntary Deviate Sexual Intercourse.

On October 24, 2007, we conducted a sentencing hearing on the two charges for which Defendant was convicted in May and for the remaining four charges on which the Defendant was found guilty in August. The sentences we imposed and the ranges for which sentence are set forth in the following chart:

| Count | Charges | Ranges | Sentence |
|-------|---------|--------|----------|
| I | Rape | 68-84 | 7-20 years |
| II | Involuntary Deviate Sexual Intercourse | N/A | Not Guilty |
| III | Involuntary Deviate Sexual Intercourse | 66-84 | Merges with Count I |

| IV | Statutory Sexual Assault | 15-21 | Merges with Count I |
|---|---|---|---|
| V | Endangering Welfare of Children | 12-18 | Merges with Count I |
| VI | Indecent Assault | 6-16 | SCI 1-2 years Consecutive with Count I |
| VII | Corruption of Minors | 6-16 | SCI 1-2 years Consecutive with Count I but Concurrent to Count VI |

(Doc. 17-20, at 3-7, <u>Commonwealth v. Simonton</u>, No. CP-38-CR-2014-2006 (Lebanon

County Ct. Com. Pl. March 11, 2008)).

## II.    <u>State Court Proceedings</u>[1]

As stated above, Simonton was convicted in two separate jury trials for

numerous sexual offenses against his stepson.

Public Defender Brian L. Deiderick represented Simonton at the preliminary

hearing, pre-trial hearing, and the initial trial.  (<u>See</u> Docs. 17-3, 17-8, 17-9).  This first

jury trial occurred on May 10 and 11, 2007.  (Docs. 17- 8, 17-9, Transcripts from May

2007 Criminal Jury Trial).  The jury convicted Simonton of indecent assault and

corruption of minors, but it was unable to reach a unanimous verdict on the other

charges.  (Doc. 17-7, May 2007 Verdict Slip for Criminal Jury Trial).

---

[1] A federal habeas court may take judicial notice of state court records. <u>Minney v. Winstead</u>, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); <u>see also</u> <u>Reynolds v. Ellingsworth</u>, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing this petition, the court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Lebanon County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

After the first trial, Simonton retained private counsel, Erin Zimmerer, Esquire. The Commonwealth prosecuted Simonton again on the remaining charges. Following the second trial, the jury convicted Simonton of rape, involuntary deviate sexual intercourse, statutory sexual assault, and endangering the welfare of children. (Doc. 17-14, August 2007 Verdict Slip for Criminal Jury Trial). On October 24, 2007, Simonton was sentenced to eight to twenty-two years' imprisonment in a state correctional institution. (Doc. 17-16, October 24, 2007 Sentencing Order). The trial court denied post-sentence motions. (Doc. 17-20, March 11, 2008 Order and Opinion). Counsel did not file a direct appeal.

On September 10, 2008, Simonton filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 17-21, PCRA Petition). The PCRA court appointed attorney John Gragson, who subsequently filed an amended petition. (Doc. 17-23, Amended PCRA Petition). Upon review of the PCRA petition, the PCRA court reinstated Simonton's direct appeal rights. (Doc. 17-24, June 15, 2009 PCRA Order). Attorney Gragson then filed a direct appeal raising errors at the preliminary hearing, trial court error in admitting certain testimony, and challenging the weight of the evidence. (Doc. 17-25, Notice of Appeal dated July 15, 2009; Doc. 17-26, Concise Statement of Matters Complained of on Appeal). The Pennsylvania Superior Court rejected the claims, and affirmed the judgment of sentence on the basis of the trial court's opinions. (Doc. 17-29, <u>Commonwealth v. Simonton</u>, No. 1234 MDA 2009, unpublished memorandum (Pa. Super. filed July 29, 2010)).

On March 24, 2011, Simonton filed a second *pro se* PCRA petition. (Doc. 17-30, PCRA Petition). The PCRA court appointed attorney David R. Warner, Jr., who filed an amended petition. (See Doc. 17-31). On August 11, 2011, the PCRA court held a hearing and, on October 12, 2011, the PCRA court denied the petition. (Doc. 17-31, Transcript from PCRA Hearing; Doc. 17-34, October 12, 2011 PCRA Opinion & Order). On November 1, 2011, Attorney Warner filed a Notice of Appeal. (Doc. 17-35, Notice of Appeal dated November 1, 2011). On May 29, 2012, the Pennsylvania Superior Court dismissed the appeal based on counsel's failure to file a brief. (Doc. 17-39, Pennsylvania Superior Court Order).

Due to several procedural issues, on February 22, 2013, the PCRA court reinstated Simonton's right to appeal from the October 12, 2011 Order as to all issues properly before the court at the time of the August 11, 2011 PCRA hearing. (See Commonwealth v. Simonton, 2014 WL 10986735, *2, 4 (Pa. Super. 2014)). The PCRA court excluded issues not presented on August 11, 2011. (Id.) Simonton filed a timely Notice of Appeal. (Id.) On April 18, 2013, the PCRA court determined that all of Simonton's issues, except one, were previously addressed in the court's October 12, 2011 opinion. (Id.) Therefore, the PCRA court forwarded the October 12, 2011 and April 18, 2013 opinions to the Pennsylvania Superior Court for review. (Id.) On February 11, 2014, the Pennsylvania Superior Court concluded that the issues raised on appeal were meritless, and affirmed the PCRA court's opinions. Commonwealth v. Simonton, 2014 WL 10986735 (Pa. Super. 2014). On July 30, 2014, the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal. (Doc. 17-46, Pennsylvania Supreme Court Order).

On April 17, 2013, Simonton filed a third PCRA petition. (Doc. 17-43, PCRA Petition). On October 8, 2013, the PCRA court dismissed the petition as untimely. (Doc. 17-45, October 8, 2013 PCRA Order).

## III.  **Standards of Review**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68.

### A.  **Exhaustion**

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

7

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting Picard, 404 U.S. at 275, 92 S.Ct. 509).

In this case, respondents contend that Simonton failed to properly exhaust the claims raised in the federal habeas petition. (Doc. 17-1, at 9-13). For the reasons set forth *infra*, the court finds that Simonton's prosecutorial misconduct claim is the only claim that has not been properly exhausted in the state courts.

### B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and,
therefore, that review on the merits of the issues presented in a habeas petition is
warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section
2254(d) provides, in pertinent part, that an application for a writ of habeas corpus
premised on a claim previously adjudicated on the merits in state court shall not be
granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is
not sufficient for the petitioner to show merely that his interpretation of Supreme
Court precedent is more plausible than the state court's; rather, the petitioner must
demonstrate that Supreme Court precedent requires the contrary outcome."
Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court
will only find a state court decision to be an unreasonable application of federal law
if the decision, "evaluated objectively and on the merits, resulted in an outcome that
cannot reasonably be justified under existing Supreme Court precedent."  Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume
that a state court's findings of fact are correct.  A petitioner may only rebut this
presumption with clear and convincing evidence of the state court's error.  Miller-El
v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard

in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); <u>Matteo</u>, 171 F.3d at 888; <u>Thomas v. Varner</u>, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. <u>Campbell v. Vaughn</u>, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); <u>Porter v. Horn</u>, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); <u>see</u> <u>also</u> <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000); <u>cf.</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." <u>Breighner v. Chesney</u>, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. <u>Porter</u>, 276 F. Supp. 2d at 296; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 408-09 (2000); <u>Hurtado v. Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001). Only when the

---

[2] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

### C. Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to effective assistance of counsel also extends to the first appeal. Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. Strickland, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at

689).  Notably, courts will not deem counsel ineffective for failing to raise a meritless argument.  <u>Strickland</u>, 466 U.S. at 691; <u>United States v. Saunders</u>, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  <u>See</u> <u>Strickland</u>, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>  Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different.  <u>See</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the <u>Strickland</u> test.  <u>Carpenter v. Vaughn</u>, 296 F.3d 138, 149 (3d Cir. 2002).  The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one.  <u>Strickland</u>, 466 U.S. at 697.

Simonton's ineffective assistance of trial counsel claim for failure to call witnesses on his behalf was addressed by the state courts on the merits and, therefore, is subject to AEDPA review.

## IV.  <u>Discussion</u>

In the instant petition, Simonton claims that all prior counsel failed to raise a weight of the evidence claim, both trial counsel were ineffective for failing to call witnesses on his behalf, the Commonwealth committed prosecutorial misconduct by

failing to turn over discovery, and he asserts that he is actually innocent of the crimes of which he was convicted.  (Doc. 1; Doc. 1-1).

### A.    Weight of the Evidence Claim

Simonton contends that all of his attorneys failed to advance a weight of the evidence claim on his behalf.  (Doc. 1, at 5).  This contention is incorrect.  Counsel for Simonton filed a direct appeal challenging, *inter alia*, the weight of the evidence. On October 11, 2008, the trial court denied Simonton's post-sentence motions and affirmed the judgment of sentence.  (Doc. 17-20).  Simonton filed an appeal to the Superior Court of Pennsylvania.  On July 29, 2010, the Pennsylvania Superior Court explicitly rejected Simonton's challenge to the sufficiency and weight of the evidence, and affirmed the judgment of sentence.  (Doc. 17-29, <u>Commonwealth v. Simonton</u>, No. 1234 MDA 2009 (Pa. Super. filed July 29, 2010)).  Simonton did not file a petition for allowance of appeal to the Pennsylvania Supreme Court. However, it is no longer necessary for a Pennsylvania inmate to petition the state supreme court for allocatur to exhaust state remedies and seek habeas relief in federal court.  In 2000, the Pennsylvania Supreme Court issued Order No. 218, which declared that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error." <u>In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, Order No. 218, 30 Pa. Bull. 2582 (Pa. May 9, 2000); <u>see</u> <u>also</u> PA. R. APP. P. 1114 historical notes (Order of May 9, 2000).  The Third Circuit has recognized that

"Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies." Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004). Thus, a prisoner's presentation of his claims to the Pennsylvania Superior Court is sufficient to exhaust available state remedies for federal habeas purposes. See Lambert, 387 F.3d at 233. This ground for relief will therefore proceed to a merits review.

"A claim that a conviction was against the weight of the evidence is non-cognizable in a habeas corpus case because Federal habeas courts are bound by the factual findings of the State courts and, accordingly, cannot reassess the weight of the trial evidence which was before those courts." Lowry v. Weneronicz, Civ. No. 11-165, 2014 WL 556191, at *14 (W.D. Pa. Feb. 13, 2014) (citing Marshall v. Lonberger, 459 U.S. 422, 434-35, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (federal courts are not permitted "to redetermine [the] credibility of witnesses whose demeanor has been observed [only] by the state trial court")). The credibility of witnesses and the resolution of conflicts of evidence fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas review. Jackson, 443 U.S. at 319; Lowry, 2014 WL 556191, at *15. See also Tibbs v. Florida, 457 U.S. 31, 37 (1982) (weight of evidence claim raises questions of credibility).

The trial court's findings regarding Simonton's weight of the evidence claim

were adopted by the Superior Court, and are as follows:[3]

> Although closely related, there is a distinction between challenges to sufficiency and weight of the evidence. That distinction was explained in <u>Commonwealth v. Whiteman</u>, 485 A.2d 459 (Pa. Super. 1984):
>
>> A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict that contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge . . . the test is not whether the Court would have decided the case in the same way, but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.
>
> <u>Id.</u> at 462, citing <u>Commonwealth v. Taylor</u>, 471 A.2d 1228 (Pa. Super. 1984). The standard to be applied when assessing a challenge to the weight of evidence imposes a "heavy burden" upon the Defendant. <u>Commonwealth v. Staton</u>, 1998 W.L. 1297080 (Pa. C.P. 1998). A jury's verdict will be overturned only when it is "so contrary to the evidence as to shock one's sense of justice . . . " <u>Commonwealth v. Schwartz</u>, 615 A.2d 350, 361 (Pa. Super. 1992). Of course, when addressing a weight of evidence claim, is it not our role to substitute our credibility judgment for that of the jury: [Credibility decisions] is a function that is solely within the province of the finder of fact which is free to believe all, part or none of the evidence." <u>Commonwealth v. Murray</u>, 597 A.2d 111, 114 (Pa. Super. 1991).

---

[3] On appeal from the judgment of sentence, the Pennsylvania Superior Court adopted the trial court's reasoning as if fully restated therein and affirmed on the basis of the trial court's opinions with regard to each of Simonton's claims on appeal. (Doc. 17-29, <u>Commonwealth v. Simonton</u>, No. 1234 MDA 2009 (Pa. Super. filed July 29, 2010)). Consequently, the trial court's opinion will be the primary reference point in addressing the weight of the evidence issue in the instant habeas petition. (Doc. 17-20; <u>Commonwealth v. Simonton</u>, No. CP-38-CR-2014-2006, Order & Opinion dated March 11, 2008).

In assessing both sufficiency and weight of evidence, we must remember that the testimony of a sexual assault victim – if believed by a jury – can itself form a sufficient basis to justify a jury's verdict of guilty.  See, e.g., Commonwealth v. Poindexter, 646 A.2d 1211 (Pa. Super. 1994); Commonwealth v. Flaherty, 417 A.2d 221 (Pa. Super. 1979); Commonwealth v. Gabrielson, 536 A.2d 401 (Pa. Super. 1988); and Commonwealth v. Shaffer, 763 A.2d 411 (Pa. Super. 2000).  This rule applies equally where the victim is a child rather than an adult. Commonwealth v. Trimble, 615 A.2d 48 (Pa. Super. 1992).  This rule has been held to apply even where inconsistencies are found within the victim's testimony.  See Commonwealth v. Polk, 500 A.2d 825 (Pa. Super. 1985); Commonwealth v. Lyons, 833 A.2d 245 (Pa. Super. 2003); and Commonwealth v. Long, 624 A.2d 200 (Pa. Super. 1993).  All of these legal precepts are built upon a fundamental foundation of America's judicial process – that it is up to a jury of common citizens to make difficult but necessary credibility decisions in criminal cases. See, Commonwealth v. Burns, 765 A.2d 1144 (Pa. Super. 2000).

In this case, J.S. testified that the Defendant performed fellatio and sodomy upon him.  In addition, J.S. testified that he performed fellatio upon the Defendant.  He stated that these events occurred when the family lived at 301 South Ninth Street.  The Commonwealth established that J.S. and his family did not live at 301 South Ninth Street after the fall of 2004, thus circumstantially establishing that J.S. was 13 years of age when the sexual contact occurred.  In addition, the Commonwealth presented corroborating evidence in the form of J.S.' sister, M.M.  J.S. related that all of the sexual contact occurred in the attic.  M.M. verified that she saw J.S. and the Defendant go up to the attic several times.  She also testified that when she wanted to see what was happening, either the door was locked or the Defendant would say something to the effect of "wait a minute" or "hold on".  On top of all of the above, M.M. also testified that J.S. told her that the Defendant "touched him at wrong places" while the two were in the attic.

We understand that the Defendant had exculpatory arguments available to him.  The Defendant could and did argue that J.S. failed to promptly report the sexual contact to authorities.  The Defendant also could and did argue that J.S. made an inconsistent statement to Detective Travis Souders.  Finally, the Defendant could and did argue that a tattoo on his chest was so obvious that a true victim of sexual assault would have noticed it.  All of these exculpatory assertions were fully presented and argued to the jury.  The jury rejected them.

> This was a difficult case, as demonstrated by the fact that one jury could not make a complete decision. Two juries listened to and observed witnesses who provided relevant information with respect to the charges against Defendant. Two juries were required to render difficult credibility decisions based upon conflicting testimony. Both juries determined that the Defendant engaged in improper sexual contact with J.S. For us to overturn their verdicts would be an insult to the hard work and integrity of 24 jurors. We will not do that. Rather, we will respect the credibility decision made by the two juries who evaluated the evidence presented. Accordingly, we will deny the Defendant's post-trial motions based upon sufficiency and weight of evidence.

(Doc. 17-20, at 8-12) (footnote omitted).

Simonton's claim that the verdict was against the weight of the evidence is unavailing as it would require the habeas court to do that which it cannot do, to wit: reassess the credibility of the evidence presented at trial. "[A] claim that the verdict is against the weight of the evidence requires the reviewing court to reassess the credibility of the evidence presented at trial." Lockhart v. Patrick, No. 06-CV-1291, 2014 WL 4231233, at *22 (M.D. Pa. Aug. 26, 2014). However, federal habeas courts are not permitted to reassess state-court credibility findings. Id. (citing Marshall v. Lonberger, 459 U.S. 422, 434-35 (1983), and Tibbs, 457 U.S. at 37-45). Consequently, the court concludes that this claim fails as it is not cognizable in a federal habeas proceeding.

**B.     Failure to Call Witnesses**

Simonton next argues that counsel at both trials were ineffective for failing to

call certain witnesses on his behalf.[4]  The Superior Court rejected this claim on

Simonton's PCRA appeal and found as follows:[5]

> In order to prevail on a claim of ineffectiveness for failing to call a
> witness at trial, the Defendant must establish five elements:
>
>> (1)  The witness existed;
>> (2)  The witness was available to testify for the defense;
>> (3)  Counsel knew of, or should have known of, the
>> existence of the witness;
>> (4)  The witness was willing to testify; and
>> (5)  The absence of the testimony of the witness was so
>> prejudicial as to have denied the Defendant a fair trial.
>
> Commonwealth v. Washington, 927 A.2d 586, 599 (2007).
>
> The Defendant argues that both Deiderick and Zimmerer were
> ineffective for failing to call witnesses on his behalf.  He testified at the
> PCRA hearing that he identified numerous witnesses for his counsel,
> including Vinnie Vasquez and Benny Williams.  Deiderick
> acknowledged that the Defendant provided him with numerous
> names.  Vinnie Vasquez and Benny Williams were not among the
> names given to Deiderick.  According to Deiderick, the people with
> whom he met in preparation for trial "did not come across well".
> Deiderick described these individuals as "dirty and disheveled".  He
> also stated that the information that was provided by these individuals
> was of dubious probative value.  In the end, Deiderick testified that it
> would have done more harm than good to call most of the people with
> whom he met.

---

[4] Attorney Deiderick represented Simonton at his first trial, and Attorney
Zimmerer represented Simonton at his second trial.

[5] On appeal from the PCRA court, the Pennsylvania Superior Court adopted
the PCRA court's reasoning as if fully restated therein and affirmed on the basis of
the PCRA court's opinion.  Commonwealth v. Simonton, 2014 WL 10986735 (Pa.
Super. 2014).  Consequently, the PCRA court's opinion will be the primary
reference point in addressing Simonton's ineffective assistance of counsel claim in
the instant habeas petition.  (Doc. 17-34, Commonwealth v. Simonton, No. CP-38-
CR-2014-2006, Oct. 12, 2011 PCRA Opinion).

Zimmerer also acknowledged that the Defendant gave her names of potential witnesses. Among the names given by the Defendant to Zimmerer were Carla Fuller, Rick Farner, Steve Simonton, Vinnie Vasquez or Bobby Zombro. [Fn. 2 – The Defendant stated that he also provided the names of Marsha Hill and Benny Williams. Zimmerer said she was never given these names]. She did not speak with either Steve Simonton or Rick Farner because Deiderick had advised her that these individuals did not possess relevant information. She did attempt on numerous occasions to contact Carla Fuller. However, Ms. Fuller never returned Zimmerer's phone calls.

At the PCRA hearing, Defendant could not provide detailed proffers as to what any of the above witnesses would have said. We simply do not know whether or how the information gleaned from these parties would have affected the Defendant's trial. We do not even know whether all of the witnesses identified by the Defendant were available and willing to testify. In short, the Defendant utterly failed to establish the elements of ineffectiveness needed to prevail within the context of a PCRA. Accordingly, the Defendant's allegation of ineffectiveness for failing to call witnesses at trial will be denied.

(Doc. 17-34, <u>Commonwealth v. Simonton</u>, No. CP-38-CR-2014-2006, Oct. 12, 2011 PCRA Opinion, at 8-10).

In this case, the state court's analysis can be justified under <u>Strickland</u>. Trial counsels' decisions to refrain from calling character witnesses simply reflect sound strategic judgments in the factual context of this case. The United States Court of Appeals for the Third Circuit has held that the precise choice made here, to forego character witnesses, is an appropriate tactical decision that does not entitle a petitioner to habeas corpus relief on the grounds of ineffective assistance of counsel. <u>Alexander v. Shannon</u>, 163 F. App'x 167, 175 (3d Cir. 2006). <u>See</u> <u>also</u> <u>Sanders v. Trickey</u>, 875 F.2d 205, 212 (8th Cir. 1989) (trial counsel's failure to call a witness "is precisely the sort of strategic trial decision that <u>Strickland</u> protects from second-guessing"). The state courts' determinations that counsels' performance was not

deficient are not an unreasonable application of <u>Strickland</u>.  Thus, Simonton is not

entitled to federal habeas relief on this claim.

C.  **Prosecutorial Misconduct**

Simonton alleges prosecutorial misconduct stemming from the prosecutor's

failure to turn over discovery.  (Doc. 1, at 6).  This claim was not presented to the

state courts, including the PCRA court.  During his second trial, Simonton informed

the trial judge that he did not receive discovery from his counsel.  Simonton set

forth an ineffective assistance of counsel claim based on his trial counsel's alleged

failure to turn over discovery.  However, Simonton never raised a prosecutorial

misconduct claim based on the prosecutor's failure to turn over discovery material.

To exhaust his state remedies, Simonton must present fairly present his claims to

the state court, either on direct appeal or by collateral review.  <u>See</u> <u>Castille</u>, 489 U.S.

at 349-50; <u>Blasi v. Attorney General of Pa.</u>, 30 F. Supp. 2d 481, 487 (M.D. Pa. 1998).

Because Simonton did not raise his prosecutorial misconduct claim in either his

direct appeal or his PCRA appeals, Simonton has failed to exhaust his state

remedies for this claim.  <u>See</u> <u>Moore v. Morton</u>, 255 F.3d 95, 103 n. 7 (3d Cir. 2001)

(declining to review some of petitioner's prosecutorial misconduct claims where

factual predicates for the claims (i.e., the prosecutor's particular actions/statements)

were not raised in each New Jersey state court); <u>see</u> <u>also</u> <u>McCandless</u>, 172 F.3d at

261 (3d Cir. 1999) ("To 'fairly present' a claim, a petitioner must present a federal

claim's factual and legal substance to the state courts in a manner that puts them on

notice that a federal claim is being asserted.").  His failure to timely present his

claims at the state level constitutes an independent and adequate state ground

sufficient to support a procedural default of his claims. <u>Barnhart v. Kyler</u>, 318 F. Supp.2d 250 (M.D. Pa. 2004). The merits of his procedurally defaulted claims cannot be reviewed unless he demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See <u>McCandless</u>, 172 F.3d at 260; <u>Caswell v. Ryan</u>, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, he must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. See <u>Murray</u>, 477 U.S. at 488. "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 366 (1993). Simonton has not established sufficient cause for his default or demonstrated actual prejudice that would justify overlooking the default in this case. <u>Cristin v. Brennan</u>, 281 F.3d 404, 412 (3d Cir. 2002). Nor is there any indication that a failure to review his claim will result in a fundamental miscarriage of justice. Because this claim has been procedurally defaulted, the court is precluded from addressing the merits. See <u>Carpenter v. Vaughn</u>, 888 F. Supp. 635, 646 (M.D. Pa. 1994).

### D. Actual Innocence Claim

To qualify for relief under a theory of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324

(1995).  The limited nature of this exception is underscored by the Court's explicit observation that "claims of actual innocence are rarely successful."  Id.

In his petition, Simonton states that he is actually innocent of the underlying crimes, and counsel was ineffective for failing to raise an actual innocence claim. (Doc. 1-1, at 17-28).  He alleges that the victim testified falsely during hearings and at trial and was incompetent to testify, and that all counsel failed call character witnesses on his behalf to establish his actual innocence.  (Id.)  Fatal to the instant petition, actual innocence claims focus on "new" evidence – "relevant [exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical] evidence that was either excluded or unavailable at trial."  Schlup, 513 U.S. at 327-28. Simonton has not produced any new evidence to persuade this court that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. To the contrary, Simonton's arguments focus on the interpretation and rehashing of arguments and testimony adduced during the state court proceedings. Furthermore, Simonton claims that respondents failed to "proffer any proof that Petitioner was legally found guilty of the crimes Petitioner actually committed." (Doc. 19, at 9).  Because Simonton's case is not one of those "rare" cases, which presents new reliable evidence that was not presented at trial, he is not entitled to relief under a theory of actual innocence.

## V.     Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has

made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

VI. **Conclusion**

For the reasons set forth above, the court will deny the petition for writ of habeas corpus. A separate order shall issue.

                                        /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania

Dated:        November 7, 2018